## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,**        ) | |
| ) | |
| **Plaintiff,**      ) | |
| ) | |
| **v.**      ) | **Case No. 3:21-cr-0005** |
| ) | |
| **SOMALIE BRUCE,**      ) | |
| ) | |
| **Defendant.**      ) | |
| ) | |

**APPEARANCES:**

**Gretchen C.F. Shappert, United States Attorney**
**Alessandra Parisi Serano, AUSA**
**Juan Albino, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Martial Webster**
Law Offices of Martial A. Webster Sr.
St. Croix, U.S.V.I.
    *For Somalie Bruce.*

## <u>MEMORANDUM OPINION</u>

**MOLLOY, C.J.**

    **BEFORE THE COURT** is the United States' (the "Government") Motion for Revocation of the Magistrate Judge's Order of Release. (ECF No. 74.) For the reasons outlined below, the Court will grant the Government's motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

    On March 18, 2021, a federal grand jury returned a nine-count indictment against Defendant Somalie Bruce ("Bruce") charging him with the following violations of federal and territorial law: (1) conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (3) conspiracy to traffic firearms in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(b); (4) engaging in the business without a

firearms license in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), 924(a)(1)(D), and 924(a)(2); (5) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); (6) shipping, transporting or receiving firearms with intent to commit an offense in violation of 18 U.S.C. §§ 924(b) and (2); (7) unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a); (8) possession of firearm with obliterated serial number in violation of 23 V.I.C. § 481(b); and (9) unlawful possession of ammunition in violation of 14 V.I.C. § 2256(a). (ECF No. 1.)

On March 30, 2021, the magistrate judge held a detention hearing. On April 1, 2021 the magistrate judge filed an Order of Detention Pending Trial. (ECF No. 38.) In the Order, the magistrate judge found that by clear and convincing evidence, no condition or combination of conditions would reasonably assure the safety of any other person or the community. *Id.* at 2. Thereafter on May 19, 2021, Bruce filed a renewed motion for release from custody or reduction of bail and/or request for hearing. (ECF No. 62.) The magistrate judge held a second detention hearing on June 16, 2021.

The relevant facts pertaining to the instant motion are derived from the Government's proffer at the March 30, 2021 detention hearing and testimony received during the June 16, 2021 detention hearing.

At the March 30 detention hearing, the Government proffered that Bruce admitted to mailing 1.1 kilograms of cocaine to an associate in Massachusetts in March of 2020. Detention Hr'g Tr. at 6:22-24 (Mar. 30, 2021). The package was intercepted by the United States Postal Service in Puerto Rico. *Id.* at 6:25-7:1. Bruce and co-defendant Jeanorah Williams ("Williams") purchased approximately $95,000 in postal money orders made payable to various firearms companies located in Florida and North Carolina. *Id.* at 7:2-6. Multiple firearm parts were mailed from these companies to Bruce and Williams in St. Croix. *Id.* at 7:6-8. It is unknown how many firearms Bruce assembled. *Id.* at 8:6. By Bruce's admission, he assembled between 75 and 100 firearms. *Id.* at 8:6-7.

The Government further proffered that the firearms were sold to various individuals in St. Croix. *Id.* at 7:20-21. Bruce admitted to sending assembled firearms to St. Thomas and selling firearms to an individual who would transport the firearms to Puerto Rico. *Id.* at 8:1-

3. Text messages obtained by the Government show conversations regarding sending firearms to the British Virgin Islands. *Id.* at 8:3-5.

The Government also proffered that Bruce admitted he had been assembling firearms for several years to supplement his income. *Id.* at 8:22-23. Additionally, by Bruce's admission, it cost him $1,000 to build firearm, which he would sell for $2,000. *Id.* at 9:1-2. At no time relevant to the proceedings was Bruce or Williams licensed to possess, sell, or build firearms. *Id.* at 9:3-4.

The Government finally proffered that it had obtained invoices, intercepted packages, controlled deliveries that the Government knew contained firearms parts as evidence. *Id.* at 9:8-10. Additionally, two search warrants executed in December of 2020 yielded several firearms parts.[1] *Id.* at 11:11-12. Upon Bruce's and Williams' arrest, approximately 3 months later, the Government proffered that the home was again searched with the defendant's consent and additional firearms parts were discovered. *Id.* at 10:22-11:3.

At the June 16, 2021 detention hearing, William Hugh Hendrickson ("Hendrickson") testified as a potential third-party custodian. *See* Detention Hr'g Tr. (June 16, 2021). Hendrickson has lived on St. Croix for most or all his life. *Id.* at 9:21-23. He lives with his wife, 17-year-old son, and 24-year-old daughter. *Id.* at 13:3-4. Hendrickson has been a member of the Virgin Islands Army National Guard for 40 years where he currently serves as a Federal Technician. *Id.* at 8:15-22. He and his wife work outside of the home from 8:00 a.m. to 5:00 p.m., Monday through Friday. *Id.* at 13:8-15.

Hendrickson testified that he is Bruce's uncle and has known Bruce for virtually his entire life. *Id.* at 9:9-13. He had not visited Bruce in his home prior to 2017. *Id.* at 15:16-21. However, Hendrickson was in frequent communication with Bruce. See *id.* at 16:2. Hendrickson further testified that he was aware of the charges being brought against Bruce, and that regardless of the penalties he was willing to serve as Bruce's third-party custodian. *Id.* at 18:10-19:6. Hendrickson agreed to comply with his obligation to call the police, the U.S. Marshals Service, or the Court if Bruce violated any condition imposed by the magistrate

---

[1] Per the Government's Motion, the warrants were executed on December 8, 2020. (ECF No. 74, at 4.)

judge. *Id.* at 11:7-12. Hendrickson testified that he believes his relationship with Bruce is such that Bruce would follow his commands. *Id.* at 19:11-13.

Upon examination by the magistrate judge, Hendrickson agreed to have a landline installed in his household. *Id.* at 19:21-22. Finally, Hendrickson testified that he had a duly licensed firearm in his household that he was willing to surrender. *Id.* at 33:19-23.

The defense acknowledged that the charges faced by Bruce trigger a rebuttable presumption of dangerousness and risk of flight. *Id.* at 21:9-10. However, defense argued that the presumption had been rebutted, citing Hendrickson's testimony and willingness to serve as Bruce's third-party custodian, Bruce's lack of prior contact with the criminal justice system, and Bruce's strong community ties to the Virgin Islands as a lifelong resident of St. Croix and a father. *Id.* at 21:12-25. The defense stated that they had requested a year's administrative leave from his employment and requested release under house arrest. *Id.* at 22: 5-24. [2]

The Government responded that Bruce had not rebutted the presumption of detention. *Id.* at 28:21-22. The Government argued that Bruce had admitted to trafficking firearms for five years. Additionally, the Government stated that that more firearms were found in Bruce's home upon his arrest three months after the search warrant executed in December of 2020 returned several firearm parts is evidence that Bruce continued his gun trafficking activities. *Id.* at 29:19-30:8. The Government further stated that neither Hendrickson nor his wife would be present in the residence for five days out of the week. *Id.* at 30:14-16. As such, the Government argued that Hendrickson could not ensure that Bruce would comply with his directions, as asserted in Hendrickson's testimony, and therefore Bruce is danger to his community. *Id.* at 30:22-23. Finally, the Government argued that

---

[2] The defense additionally argued that counsel has been unable to communicate effectively with Bruce due to his current detention at the Metropolitan Detention Center in Guaynabo, Puerto Rico, asserting that the difficulties that accompany travel between the Virgin Islands and Puerto Rico, in conjunction with restrictions related to the COVID-19 pandemic, have deprived Bruce from access to counsel. *See id.* at 23-27. The magistrate judge noted during the hearing and the Court now restates that the prison is allowing in person access to legal counsel, and counsel can otherwise communicate with defendants virtually. *Id.* at 26:7-9; *see also* U.S. Dep't Just., *COVID-19 Social Visitation Procedures* 2 (Oct. 1, 2020) https://www.bop.gov/locations/institutions/gua/GUA_covid_modified_social_visiting_oct_2020.pdf.

Hendrickson's testimony that he was willing to serve as a third-party custodian and supervise Bruce is not itself sufficient to rebut the presumption of detention. *Id.* at 31:4-16.

The defense argued that the assertion that Bruce had continued his trafficking activities after the initial search warrant was based on speculation. *Id.* at 32:19-22. The defense further argued that Bruce had no history of violence, despite the current charges. *Id.* at 33:24-34:1. The defense also contended that Hendrickson would be present outside of working hours, was committed to making sure that Bruce followed the conditions of bail and would contact the appropriate authorities if those conditions were violated. *Id.* at 32:10-33:5. As such, the defense argued that, as a third-party custodian, Hendrickson would be able to provide the means to reasonably assure the safety of the community and reasonably assure Bruce's appearance in court. *Id.* at 34:21-23.

After hearing the testimony and argument of the parties, the magistrate judge concluded that, after considering all relevant factors, the Court would release Bruce under strict conditions of bail. *Id.* at 21-24. The magistrate judge issued an Order Setting Conditions of Release on June 16, 2021. (ECF No. 68.)

On June 17, 2021, the Government filed a motion requested that the magistrate judge stay the Order of Release pending a review by the district judge. (ECF No. 72.) The magistrate judge granted the motion on June 17, 2021. Also on June 17, 2021, the Government filed its motion requesting revocation of the magistrate judge's Order of Release. (ECF No. 74.) Bruce filed his opposition on July 1, 2021. (ECF No. 77.)

## II. LEGAL STANDARD

A district court reviews a magistrate judge's order of detention *de novo*. *See United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985). A district court may rely on the evidence presented before the magistrate judge. *See United States v. Koenig*, 91 F.2d 1190, 1193 (9th Cir. 1990) (explaining that, when hearing motions pursuant to 18 U.S.C. § 3145, "the district court is not required to start over in every case").

Pretrial detention of a criminal defendant will be ordered only if, after a hearing upon a motion by the government, a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of

any other person and the community." 18 U.S.C. § 3142(e)(1); *see also United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) ("The Bail Reform Act of 1984 authorizes judicial officers to grant persons charged with federal offenses release on bail unless it is determined that 'such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'") (quoting 18 U.S.C. § 3142(b)). The government carries the burden to establish either (A) that no condition or combination of conditions will reasonably assure the appearance of the person as required by a preponderance of the evidence, *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986); or (B) that no condition or combination of conditions will reasonably assure the safety of any other person and the community by clear and convincing evidence, *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985).

In determining whether any conditions of release can reasonably assure the defendant's appearance in court and the safety of the community, a court must consider the following four factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1491, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986) ("The statute requires that in determining whether there are conditions of release that will

reasonably assure such appearance and safety, the judicial officer shall take into account the available information concerning (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person and the community that would be posed by the person's release.").

A rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq)." 18 U.S.C. § 3142(e). Once triggered, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community*." United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam). The burden on the defendant is one of production, not persuasion. *See United States v. Nikparvar-Fard*, Crim. No. 18-101-1, 2019 U.S. Dist. LEXIS 117710, at *7 (E.D. Pa. July 11, 2019).

Courts have construed this requirement as "easy to meet," describing the defendant's burden as "relatively light." *United States v. Araiza-Vega*, Crim. No. 20-218, 2020 U.S. Dist. LEXIS 207949 (W.D. Pa. Nov. 6, 2020); *see also United States v. Mastrangelo*, 890 F. Supp. 431, 436 n.3 (E.D. Pa. 1995). Such evidence may include, "testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation." *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986). However, even if the presumption has been rebutted, it retains evidentiary weight and should be considered alongside the remaining factors set forth under 21 U.S.C. § 3142(g). *See United States v. Wood*, Case No. 19-20216-6, 2020 U.S. Dist. LEXIS 79472, at *3 (E.D. Mich. May 6, 2020); *United States v. Ebrahim*, Case No. 4:19-CR-0271-SDJ, 2020 U.S. Dist. LEXIS 42713, at *6 (E.D. Tex. Mar. 12, 2020); *see also Nikparvar-Fard*, 2019 U.S. Dist. LEXIS 117710, at *8 ("Even after the defendant rebuts the presumption, the Court should 'continue to give the presumption of flight some weight. . .'")(quoting *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986)).

### III. DISCUSSION

In this matter, the Government filed an indictment charging Bruce with conspiracy to possess cocaine and possession of cocaine in Counts One and Two in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 846. (ECF No. 1 at 1-2.) Each charge carries a penalty of not less than five years and up to forty years in prison. 21 U.S.C. § 841(b)(1)(B). "It is well-established that an indictment is sufficient to support a finding of probable cause necessary for the rebuttable presumption under § 3142(e) to arise." *United States v. Matthias*, Crim. No. 2006-0025, 2017 U.S. Dist. LEXIS 63710 at *14 (D.V.I. Apr. 27, 2017) (quoting *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)) (internal quotations omitted). Because these offenses carry a maximum term of imprisonment of ten years or more, pursuant to 18 USC § 3142(a)-(e), a rebuttable presumption exists "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community". Accordingly, Bruce must produce "'some credible evidence' to assure his presence before the court and the safety of the community." *United States v. Mark*, Crim. No. 2006-80, 2007 U.S. Dist. LEXIS 66161, at *10 (D.V.I. Aug. 25, 2007) (quoting *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)).

The Government argues that Bruce has not overcome the presumption of detention applicable to the crimes charged. It further argues that there is no condition or combination of conditions of release that will reasonably assure her appearance as required and the safety of any other person and the community. The Court agrees and finds that Bruce has not overcome the presumption of detention.

At the detention hearing, Bruce provided testimony from his uncle, Hendrickson, who attested to Bruce's ties to the Virgin Islands and Hendrickson's ability to house and control Bruce. *See* Detention Hr'g Tr. at 9 (June 16, 2021). Beyond that, the defense argued that Bruce's status as a first-time offender with no violent criminal history, and Bruce's employment history mitigate the risk of flight and danger to the community. *See generally id.* However, this evidence is insufficient to rebut the presumption of detention.

This Court has held that the existence of family and community ties and the availability of a third-party custodian do not rebut the presumption of dangerousness when

triggered. *United States v. Matthias*, Crim. No. 2016-0025, 2017 U.S. Dist. LEXIS 63710, at *38 (D.V.I. Apr. 27, 2017). In *Matthias,* the Court held that that a defendant who "put forth evidence regarding his ties to family and the community; the availability of two third-party custodians and a place to stay; and his voluntary surrender to the police" had not put forth any "evidence of lack of dangerousness," therefore the defendant had failed to rebut the presumption of dangerousness and detention was warranted. *Matthias*, No. 2016-0025, 2017 U.S. Dist. LEXIS 63710, at *38; see also *United States v. Benjamin*, No. 19-79, 2021 U.S. Dist. LEXIS 150854, at *7-8 (D.V.I. Aug. 11, 2021) ("Although Defendant presented evidence of his ties to the community and the availability of a third-party custodian . . . he did not present any credible evidence rebutting the statutory presumption that he is a danger to the community."); *but see United States v. Carbone*, 793 F.2d 559, 561 (3d Cir. 1986) (holding that where a defendant produced evidence relating to "character, family ties, employment, and length of residence in the community," was a first offender with an offer of steady employment pending trial and agreed to be confined in his parents' home outside of working hours as a condition of release, the defendant rebutted the presumption of dangerousness).

Furthermore, the Court questions Hendrickson's suitability as a third-party custodian. Hendrickson works outside of the home from 8:00 a.m. to 5:00 p.m. As a result, Bruce would be unsupervised for, at minimum, nine hours per day, during which time he would have the opportunity to partake in activities that pose a danger to the community. Courts have found that such situations render proposed third-party custodians inadequate. *See United States v. Walker,* No. 4:16-cr-00019-05, 2016 U.S. Dist. LEXIS 141435, at *20 (M.D. Pa. May 12, 2016)(finding that a third party custodian was not a "viable" option because she would be absent during working hours, thus "leaving the Defendant unsupervised and free to participate in illicit activity"); *United States v. Bowers*, 3:13-cr-034-RRB-JDR, 2013 U.S. Dist. LEXIS 76212, at *6 (D. Alaska May 28, 2013)(citing the proposed custodian's full time job as a reason he could not serve as custodian to the defendant). This lack of supervision is particularly of interest here, as Government has presented evidence that any alleged illegal

activities did not require Bruce to leave the house, having occurred within Bruce's home or via mail carrier.[3]

Finally, although Hendrickson testified that he believed that Bruce would listen to Hendrickson's instructions to abide by the terms of release, at no time did he comment on Bruce's character. While such testimony is not mandatory to rebut the presumption of dangerousness, the Court find this absence notable considering the other testimony given.

Therefore, being that Hendrickson is not a viable third-party custodian, and the remaining evidence is insufficient to rebut the presumption of dangerousness, the Court finds that Bruce has not overcome the presumption of dangerousness and detention is appropriate. Furthermore, as the presumption of dangerousness has not been overcome, the Court finds it unnecessary to engage in an analysis under the § 3142(g) factors.

## IV. CONCLUSION

Bruce has failed to rebut the presumption of dangerousness and risk of flight prescribed under 18 U.S.C. § 3142(e)(3). Accordingly, the Government's motion is granted.[4] An appropriate order follows.

**Dated:** November 10, 2021                    */s/ Robert A. Molloy*
                                                **ROBERT A. MOLLOY**
                                                **Chief Judge**

---

[3] The Court recognizes that any discussion on the evidence on record is solely for the purposes of this pretrial motion. Bruce remains presumed innocent until proven guilty. The facts discussed herein are alleged and the discussion shall not be construed as indicative of future proceedings.

[4] Bruce also filed a Renewed Motion for Release in Accordance with Magistrate Judge's Order of Release on October 26, 2021. (ECF No. 91.) In it, Bruce asserted that he was entitled to release under the conditions established by the release order because the Court had failed to address the appeal "promptly" as stated in 18 U.S.C. § 1345(a). Bruce cites *United States v. Fernandez-Alfonso*, 813 F.2d 1571, which found that a thirty day delay between defendant's motion for review of the magistrate's detention order and the district court hearing was not sufficiently "prompt" under § 3145(b). (ECF No. 91,. at 15.) However, courts have held that this standard is inapplicable in cases in which the defendant is found to be a danger to the community. *See United States v. Gonzales*, 852 F.2d 1214, 1215 (9th Cir. 1988); *see also United States v. Barker*, 876 F.2d 475, 477 (5th Cir. 1989)(holding that "[i]n light of the statutory presumption and lower court finding that Barker's release would endanger the community," defendant would not be released despite a delay in addressing the defendant's appeal); *United States v. Pasciuti*, 1992 U.S. App. LEXIS 15183, at *8 (1st Cir. Mar. 19, 1992)(finding that, with regard to § 1354 "[n]either the timing requirements nor any other part of the act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained"). In finding that Bruce poses a danger to the community, the Court rejects this argument. All other arguments asserted in the motion are identical to those discussed herein, and therefore need not be addressed further.